# **EXHIBIT C**

# DEALER AGREEMENT

Date: _11-12-14_

Dealer Name: ("Dealer") _BEST AUTO GROUP INC_

Dealer Address: _4253 BOSTON RD BRONX N.Y. 10466_

_____ M&T Bank - 8th Floor, Buffalo, New York 14203 Attention: Consumer Lending - Indirect Product ("M&T")

WHEREAS, the parties desire to set forth their rights, duties, and responsibilities related to their participation in arranging financing for the purchase of automobiles, recreational vehicles, vessels and other products as described herein (the "Collateral");

NOW THEREFORE, in consideration of the mutual promises and covenants contained herein, and for adequate consideration, the sufficiency of which is acknowledged, the parties hereto, intending to be legally bound, agree as follows:

1. **ASSIGNMENT OF CONTRACTS.** Dealer may wish to assign (and may have assigned) retail installment sale contracts to M&T. In the case of an installment loan note, Dealer agrees to act as M&T's limited agent in the sole capacity to facilitate the completion of the installment loan note and related paperwork. Collectively retail installment sale contracts, installment loan notes, security agreements or other evidence of indebtedness, in a form agreed to by M&T, are referred to as the "Contract" or "Contracts" and the terms of the Contracts are incorporated herein by reference. M&T in its discretion may elect (but is under no obligation) to purchase Contracts from Dealer and may cease Contract purchases or loan originations, for any reason whatsoever, immediately upon notice. Dealer will deliver the Contracts and related documents in a manner as M&T may periodically establish and communicate.

2. **RESERVE ACCOUNT.** M&T may establish a reserve account in accordance with a reserve account addendum entered into by the parties (hereinafter the "Reserve Account" and "Addendum").

3. **NON-RECOURSE.** The assignment of any Contract by Dealer to M&T shall be without recourse, unless the parties agree otherwise or the Contract covers the sale of Collateral by Dealer to any partner, stockholder, director, officer or employee of Dealer, or of any relative of such a person. Notwithstanding the foregoing, Dealer shall be obligated to M&T with respect to such Contract as provided for in Section 10.

   For a contract assigned with recourse, at any time after the occurrence or existence of any event or condition that entitles M&T to declare the balance owing pursuant to such Contract, Dealer shall immediately repurchase the Contract from M&T upon demand. The repurchase price shall be equal to the outstanding balance on the Contract, plus accrued interest and all costs and expenses incurred by M&T through the time of repurchase by Dealer.

4. **SIGHT DRAFTS.** Dealer shall immediately, upon demand reimburse M&T for the amount of any sight draft if: M&T paid a sight draft drawn on M&T by Dealer and M&T subsequently chose not to accept the underlying contract.

5. **FUNDS IN TRUST.** Dealer agrees that any amounts received by Dealer in connection with any Contract or Collateral, shall be held in trust for M&T and shall be paid to M&T immediately upon receipt. Dealer shall not request or demand any amounts pursuant to a Contract, unless the Contract has been reassigned to Dealer by M&T.

6. **POWER OF ATTORNEY.** Dealer irrevocably and unconditionally appoints M&T as its attorney-in-fact, with full power of substitution, to (a) execute any financing statement or amendments thereto relating to any Contract; (b) execute any Contract assignment if a Contract is received by M&T without the assignment having been executed by Dealer; (c) endorse any check or other instrument representing any payment pursuant to any Contract; and (d) execute and deliver any other writing, and take any other action, that M&T in its discretion shall deem necessary or desirable to accomplish any purpose of this Agreement. This power of attorney is coupled with an interest in M&T's favor and shall not be terminated or affected by Dealer's death, disability or incompetence.

7. **MODIFICATIONS OF CONTRACTS.** M&T is authorized, in its sole discretion, and without notice to Dealer, to take any action it deems appropriate to collect any amounts owing under a Contract, including refinancing, modifying, renewing or extending a Contract.

8. **REPRESENTATIONS AND WARRANTIES.** Dealer represents and warrants with respect to this Agreement and each Contract and Collateral that: a) Dealer and all of its agents, subcontractors or delegates, have any and all consents, licenses or other approvals, authorizations, registrations or declarations with any governmental bureau or agency that may be required in connection with the transactions anticipated by this Agreement and will provide copies to M&T upon request; b) Dealer has the authority, power, right and capacity to enter into this Agreement and the transactions contemplated hereby; c) The execution and delivery of this Agreement and Dealer's performance hereunder will not conflict with or constitute a breach of or a default under any terms, conditions or provisions of any agreement or instrument to which Dealer is a party, or by which any of its assets are bound; d) Dealer will immediately notify M&T of any fair lending issues, concerns or complaints that arise with respect to the Dealer or any of its agents, subcontractors; e) Each person signing the contract (including buyers, co-buyers, borrowers, co-borrowers, co-signers, and co-owners, a "Buyer") has the legal capacity to execute the Contract and was of legal age when the Contract was executed; f) The identity of the individual(s) signing the Contract is true and accurate and the Contract has not been the subject of identity theft; g) The Buyer's address on the Contract is correct and the Buyer's true name is signed to the Contract by the Buyer, or by a duly authorized agent or representative who is noted as such; h) the Contract is a valid and binding obligation of the Buyer, which is not subject to any claims, defenses or set-offs; i) All acts, filings and notations required with respect to the certificate of title or documented ship's mortgage and similar title documents necessary to perfect the security interest of M&T in the Borrower's Collateral have been properly effected and in the event that the security interest is not properly effected or if the security interest is voided, avoided or superceded, Dealer agrees to immediately ensure that M&T's lien is properly effected or re-effected or in M&T's discretion, re-purchase the Contract from M&T; j) The Contract and all other documents associated therewith are genuine, valid, complete and properly executed and were executed in the presence of Dealer, or if executed outside Dealer's presence, all Buyer signatures have been notarized; k) The sale of and the terms of any products (such as, credit insurance, warranties, service agreements, GAP products, debt cancellation products, rust proofing, window etching, lowjack and security systems, hereinafter "Ancillary Products") fully comply with all applicable, federal, state and local laws, rules, regulations or other governing provisions (generally, all legal requirements, regardless of subject, are referenced as "Requirements of Law") and Dealer has provided the Buyer with any required disclosures; l) Dealer has remitted to the issuer or provider the cost of any Ancillary Products; m) Each Contract represents the bona fide sale of the Collateral and does not involve any element of credit for any purpose other than the purchase of said Collateral and any Ancillary Products; n) Dealer will give to each Borrower, all documentation or disclosures required by the Requirements of Law within the time frames and in the manner prescribed by all Requirements of Law; o) Dealer has no knowledge or reason to know of any fact or allegation that if true, would impair or otherwise affect the validity or enforceability of the Contract, or impair or otherwise affect any obligation of any Buyer; p) Dealer or the Collateral's manufacturer will be the prior owner of the Collateral, unless the parties agree otherwise; q) Neither Dealer nor any agent or employee of Dealer will make any promises, representations, warranties or covenants to Buyer concerning any Contract or Collateral which are contrary to the terms of the Contract or this Agreement; r) The Collateral shall be in good working order and free from defects, is fit for the intended use or purpose and will contain at least the standard equipment for such Collateral and such optional equipment as is outlined in the Contract and associated documentation; s) Dealer will not assign a Contract to M&T unless the Collateral is complete and delivered to the Buyer; and t) The collateral with respect to a Contract has been delivered and accepted by the Buyer and Dealer has performed all of its obligations related thereto.

9. **STATUTES, REGULATIONS AND ORDINANCES.** Dealer shall comply with Requirements of Law (including notice and record retention requirements) in connection with any Contract or any application for credit submitted through Dealer to M&T, whether or not approved by M&T.

10. **REPURCHASE AND REASSIGNMENT.** If M&T determines in its discretion that (a) any representation or warranty with respect to any Contract set forth in Section 8 of this Agreement was or is false, inaccurate or misleading in any respect or (b) Dealer failed to perform any of its obligations with respect to any Contract, the Dealer shall immediately upon demand purchase or take re-assignment of the Contract. The price is equal to the outstanding balance on the Contract at the time of purchase or re-assignment, plus accrued interest and all reasonable costs and expenses incurred by M&T related to the Contract.

11. **INDEMNIFICATION.** Dealer shall defend, indemnify and hold harmless M&T against each and every liability, cost, claim and expense (including, but not limited to attorney's fees and disbursements) incurred by M&T as a direct or indirect result of (a) the Dealer's breach of any representation or warranty with respect to any Contract set forth in Section 8, or any representation or warranty being false or misleading in any respect at any time, as determined by M&T in its sole discretion, (b) any failure by Dealer, as determined by M&T in its sole discretion, to perform any of Dealer's obligations pursuant to this Agreement, (c) the assertion at any time of any claim, counterclaim, setoff or defense based, in whole or in part, upon any allegation that Dealer did not comply with any Requirements of Law in connection with any application for credit submitted through Dealer to M&T, whether or not approved by M&T, or (d) the assertion at

any time of any claim, counterclaim, setoff or defense that can be asserted against Dealer by any person with respect to any Collateral or Ancillary Product that is the subject of a Contract (including, but not limited to, any claim, counterclaim, setoff or defense based, in whole or in part, upon any allegation that such goods or services were defective or were not as represented to any person or that Dealer refused to honor any warranty, guaranty or service agreement given or entered into by Dealer or by the manufacturer of such goods).

12. **CONFIDENTIALITY.** The parties agree to abide by all federal, state and local privacy laws, rules and regulations, including any requirements with respect to information that is "non-public personal information" (as defined in the applicable statutes and/or regulations) of Buyers or applicants obtained in connection with the transactions contemplated by this Agreement.

13. **INFORMATION SECURITY.** Dealer will comply with M&T's Information Security requirements as provided to Dealer and amended from time to time.

14. **SET OFF.** M&T shall have the right to deduct from any deposit account, security, funds, obligation or the Reserve Account, any funds owed to M&T, whether the property is held by M&T, its parent corporation, subsidiaries or affiliates. Each exercise of set-off by M&T shall be deemed to be immediately effective at the time M&T is entitled to exercise the right of set off, even though evidence thereof is not entered on its records until later.

15. **REASSIGNMENT.** Any reassignment of any Contract or Collateral by M&T to Dealer shall be without recourse upon M&T and without any recourse, representation or warranty of any kind. Any reassignment of a Contract shall not impair or otherwise affect any of Dealer's obligations or M&T's rights pursuant to this Agreement or under applicable law with respect to such Contract, whether arising before or after such reassignment, other than M&T's rights and remedies as assignee of such Contract.

16. **INDEPENDENT CONTRACTOR.** Dealer shall only be an independent contractor with respect to any Contract or any application for credit submitted through Dealer to M&T. Neither Dealer nor any employee or other agent of Dealer shall be, or in any respect act as, an employee of M&T.

17. **REMEDIES, CUMULATIVE.** The parties' rights and remedies pursuant to this Agreement or otherwise shall be cumulative, and no right or remedy is exclusive of any other right or remedy. No single or partial exercise of any right or remedy shall preclude the exercise of any other right or remedy. No course of dealing, usage of trade, performance, conduct, oral agreement or representation, whether or not relied or acted upon, shall operate as a waiver of any right or remedy. No notice or demand of any kind, and no attempted but unsuccessful notice or demand of any kind, prior to exercising any right or remedy, whether or not relied or acted upon, shall operate as a waiver of any right on any future occasion without any notice or demand of any kind. No waiver of any right or remedy shall be effective unless made in a writing duly executed by the parties specifically referring to the waiver. A waiver on one occasion does not affect future rights and responsibilities and shall be limited to that occasion.

18. **AMENDMENT.** This Agreement can only be amended or modified in a writing executed by both parties; course of conduct or usage of trade, whether or not relied or acted upon, shall not be considered modifications to this Agreement.

19. **DELAY IN EXERCISING RIGHTS.** Neither of the parties' rights or obligations pursuant to this Agreement or otherwise shall be impaired or affected by any act, omission, delay or other thing. The parties' respective rights can be exercised from time to time as that party deems appropriate.

20. **CONTINUING AGREEMENT.** This is a continuing agreement, and shall continue in full force and effect unless otherwise terminated. This Agreement may be terminated by M&T at any time, effective immediately upon notification to Dealer of the same, or at any effective date contained in the notice of termination. The parties' rights, remedies and obligations under this Agreement shall not be impaired, excused or waived as a result of termination of this Agreement, for any applications, Contracts or Collateral originated, transferred, submitted or assigned prior to termination.

21. **PRIOR UNDERSTANDING AND INTEGRATED AGREEMENT.** This Agreement contains the complete understanding of the parties and supersedes any and all prior discussions and agreements between Dealer and M&T with respect to Contracts and other matters contained herein. This Agreement applies to all Contracts purchased, assigned or originated after the date of this Agreement. Any prior agreements between the parties relating to the purchase of contracts before the execution of this Agreement shall remain in effect for those contracts.

22. **WRITTEN NOTICE.** Any notices relating to this Agreement shall be deemed given when personally delivered, sent via facsimile (transmission confirmed) or mailed via first class mail to the addresses shown at the top of the Agreement.

23. **CONSTRUCTION AND HEADINGS.** In this Agreement, references to the singular shall include the plural and vice versa. Headings are for illustration purposes only and are not to be considered part of the Agreement.

24. **APPLICABLE LAW.** This Agreement shall be governed by and interpreted in accordance with the laws of the Dealer's state as identified above.

25. **ASSIGNMENT.** This Agreement is for the benefit of the parties, including their respective successors and permitted assignees and can be enforced against the other party and its successors, legal representatives and assignees, including a purchaser of all or substantially all of Dealer's assets. Dealer shall not assign any of its rights, remedies or obligations under this Agreement without M&T's prior written consent; any assignment without M&T's consent shall be deemed void with respect to M&T. Furthermore, Dealer will provide M&T with at least thirty (30) days advance notice before entering into any sale of the dealership, or all or substantially all of Dealer's assets and will satisfy all amounts owed to M&T pursuant to this Agreement prior to any such sale.

26. **EXERCISE OF RIGHTS.** M&T can, but is not obligated to, exercise each of its rights and remedies pursuant to this Agreement, at any time and from time to time, without any notice or demand. M&T shall not be obligated to exercise any right or remedy or to take any action permitted by this Agreement.

27. **INTERPRETATION AND SEVERABILITY.** Whenever possible, each provision of this Agreement shall be interpreted as to be effective and valid under applicable law. If any provision is prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law, or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent necessary to comply with the law, without the remainder thereof or any other provision being prohibited or invalid.

28. **PRIOR DEALING.** In consideration of the business relationship between the parties, and other good and valuable consideration, the sufficiency of which is acknowledged, Dealer forever releases and discharges M&T, its parent, subsidiaries, affiliates, officers, directors and employees, from each and every liability, determined or contingent, liquidated or unliquidated, arising out of any matter from the beginning of time to the date of this Agreement.

29. **WAIVER OF JURY TRIAL and RIGHT TO COUNSEL.** *The parties hereby knowingly, voluntarily, and intentionally waive any right to trial by jury the parties may have in any action or proceeding, in law or in equity, in connection with this Agreement or the related transactions. The parties represent that they have read this Agreement and have been advised of their right and opportunity to have the Agreement reviewed by legal counsel of their choosing.*

30. **ACCEPTANCE.** The person signing this Agreement on behalf of Dealer represents and warrants that (s)he is authorized to sign this Agreement and any documents related thereto.

Dated 11/12, 20 14

By _____
Signature and title of individual executing this Agreement for Dealer

Witnessed By _____
Name of Witness

Accepted By _____
Name and Title of Individual Accepting on Behalf of M&T

Rev. 04/06

## RESERVE ACCOUNT ADDENDUM
### 80/20 SPLIT – 90 DAY PROGRAM

Dealer Name: _BEST AUTO GROUP INC_

Mailing Address: _4053 BOSTON RD_

City: _BRONX_  State: _N.Y._  Zip Code: _10466_

Dealer Number: _7117620_  Date of Dealer Agreement: _____

Telephone: _718-881 000 1_  Facsimile: _718 881 0008_

This Reserve Account Addendum (the "Addendum") is entered into between Dealer and M&T as of the date below and supplements the Dealer Agreement between the parties. For good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Capitalized terms not defined in this Addendum have the meanings given to them in the Dealer Agreement between the Dealer and M&T.
2. Until M&T notifies the Dealer otherwise, M&T will not purchase or accept any Contract offered to it by the Dealer where the Contract's interest rate (the "Contract Rate") exceeds M&T's retention rate by an amount greater than M&T's policy, as disclosed to the Dealer from time to time.
3. No interest shall accrue on any funds held in the Reserve Account, including the Holdback.
4. **Reserve Deposit:** For each Contract originated by or sold to M&T, M&T shall deposit into the Reserve Account 80% of the difference (the "Reserve Deposit") between the finance charges calculated at the Contract Rate and the finance charges calculated at M&T's published buy rate (the "Retention Rate"), the remainder of which shall be retained and owned by M&T. The Contract Rate must at least equal the Retention Rate unless subvented in accordance with paragraph 10. For Contracts with an amount financed of $10,000 or greater, if the Contract Rate and the Retention Rate are equal, M&T shall make a Reserve Deposit equal to one (1%) percent of the amount financed, which shall not be subject to chargebacks.
5. **Reserve Accrual:** Every time a Buyer makes a payment on a Contract, the amount of the interest portion of the payment attributed to the Reserve Deposit will be earned by the Dealer (known as a "Reserve Accrual"). The Reserve Accrual will be earned by the Dealer at the rate necessary to fully amortize the Reserve Deposit to zero if the customer makes all payments required by the Contract on time. Dealer understands that the Reserve Deposit will be earned slower if the Buyer pays early and will be earned faster if the Buyer pays late.
6. **Chargebacks:** A debit in the amount of the unearned reserve (the Reserve Deposit less the Reserve Accruals) will be made to the Reserve Account if a Contract is either prepaid within 90 days of the date of origination or charged-off at any time during the life of the Contract. If Dealer repurchases a Contract, M&T can debit the Reserve Account for the entire Reserve Deposit regardless of any Reserve Accruals that may have occurred.
7. **Holdback:** The Dealer shall be required to maintain the sum of _—0—_ ($ _0_ ) on deposit with M&T in the Reserve Account (the "Holdback"). The

Holdback is not required to be segregated in a separate account, but shall remain in the Reserve Account until all Contracts purchased by M&T are paid in full and all Dealer's obligations under the Dealer Agreement have been satisfied. On a monthly basis, M&T shall distribute to Dealer any amounts in the Reserve Account that exceed the Holdback.

8. If the Reserve Account does not contain sufficient funds to satisfy any funds that Dealer may owe to M&T, including the Holdback, Dealer agrees to pay any such amounts within 3 business days of demand by M&T.
9. On a monthly basis, M&T shall provide dealer with a statement outlining activity in the Reserve Account. Dealer agrees to examine each statement and to notify M&T of any error or discrepancy. The failure by Dealer to notify M&T of an error or discrepancy within sixty (60) days after M&T sends the statement at issue shall preclude Dealer from asserting any discrepancy or error against M&T.
10. Dealer is permitted to offer to M&T a Contract for sale, where the Contract Rate is less than the retention rate, provided that Dealer pays M&T a fee as agreed upon by the parties.
11. Except as may be amended or modified herein, the provisions of the Dealer Agreement shall continue unchanged and in full force and effect.
12. The person signing this Addendum on behalf of Dealer represents and warrants that (s)he has been authorized to sign this Addendum and any documents related thereto by the Board of Directors of Dealer.

Dated _____11-12-_____

By _____
Signature and title of individual executing this Agreement for Dealer

Witnessed By _____
                           Name of Witness

Accepted By _____
                Name and Title of Individual Accepting on Behalf of M&T